# Louisville & Nashville Railroad Company v. Commonwealth.

(Decided October 22, 1918.)

## Appeal from Bullitt Circuit Court.

Railroads— Operation — Nuisance — Indictment —Sufficiency. —In the absence of an ordinance prescribing a reasonable maximum speed through an incorporated town, it is essential to the validity of an indictment charging a railroad company with maintaining a common nuisance, by habitually running its trains at such a dangerous and excessive rate of speed as to jeopardize the lives of the public, to allege that such running of such trains was without the customary and necessary warnings of their approach.

MOORMAN & WOODWARD, J. F. COMBS and BENJAMIN D. WARFIELD for appellant.

CHARLES H. MORRIS, Attorney General, J. LEWIS WILLIAMS, T. C. CARROLL and CHARLES CARROLL for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming as to Commonwealth and reversing as to Louisville & Nashville Railroad Company.

The Louisville & Nashville Railroad Company and B. M. Starks, its general manager, W. F. Sheridan, its superintendent, and F. J. Fishback, its trainmaster, were indicted by the grand jury of Bullitt county for the offense of maintaining a common nuisance in the city of Shepherdsville, the county seat of Bullitt county. On a trial before a jury the railroad company was found guilty and its punishment fixed at a fine of $8,420. Pursuant to a peremptory instruction, Starks, Sheridan and Fishback were acquitted. From the judgment of conviction, the railroad company appeals, while the Commonwealth appeals from the judgment acquitting Messrs. Starks, Sheridan and Fishback.

The indictment charges that appellant operated a double-tracked railroad through Bullitt county and Shepherdsville, a town of the sixth class, having a population of about five hundred inhabitants; that it had a station, switches and side tracks at which passengers boarded and alighted from trains, and to and from which freight was shipped; that at all hours of the day numerous persons were in and about said station; that the plat-

forms thereat were on a level with the railroad tracks without any railings between the tracks and the platforms; that there is a street crossing over the tracks north of the station used by many persons, traveling on foot, in vehicles and on horseback; that the railroad runs through the corporate limits of Shepherdsville a distance of more than 200 yards; that immediately adjoining the right of way are many houses in which many persons reside; that there is on the east side of the right of way in Shepherdsville, within a short distance of the tracks, a common and high school, which is in session from September 1st to June 1st, with an average attendance of about 250 pupils, between the ages of six and twenty years, many of whom cross over the tracks at various points in Shepherdsville, including the crossing north of the station above referred to, and many of whom use appellant's trains in going to and from Shepherdsville to attend school; that about 100 yards south of the station, Third street approaches the railroad right of way over a footbridge erected and maintained by appellant, and that persons going to and from its station walk along the right of way between the station and the Third street footbridge. After specifying the offices held by the individual defendants and their respective duties, the indictment proceeds as follows:

"That said Louisville & Nashville Railroad Company now, and continuously for one year last past, has habitually, unlawfully, wilfully, negligently and carelessly operated its trains at all hours of the day over its tracks through the corporate limits of the city of Shepherdsville, as aforesaid, at a great, excessive and dangerous rate of speed, and without having said trains under proper control; and it is now, and has continuously for more than one year last past, habitually, negligently, wilfully and unlawfully run, at all hours of the day, its trains over the public streets and crossings in said town, at a reckless, excessive and dangerous rate of speed, without having same under proper control, or being able by use of ordinary care, to stop same to prevent injury to those passing or repassing over the public crossings and streets in said city, or using the footpaths provided by said company, as aforestated; and has unlawfully, recklessly, carelessly and negligently caused its trains, within the time above stated and in the corporate limits of Shepherdsville, to run at such an excessive and dan-

gerous rate of speed, and without being under proper control, so as to, on numerous occasions, almost cause passenger trains to collide in the city of Shepherdsville, and did, on the 20th day of December, 1917, unlawfully, recklessly, carelessly and negligently operate its train of cars at a dangerous and excesive rate of speed in Shepherdsville, and thereby causing the death of many persons and serious injury to many others; and the said B. M. Starks, as general manager aforesaid of said company, and F. J. Fishback, master of trains of said company, and the said W. F. Sheridan, as superintendent of the first division of said company, have all and each unlawfully, wilfully, wantonly and negligently continuously for one year last past before the finding of this indictment, suffered, permitted and caused the trains over which they have supervision and control, to be so managed and run as aforesaid through the corporate limits of the said city of Shepherdsville; and by reason of the aforesaid unlawful, wilful, reckless and negligent conduct of the said Louisville & Nashville Railroad Company, and the said B. M. Starks, F. J. Fishback, and W. F. Sheridan, and all, and each of same, the lives of the citizens of Bullitt county and of the city of Shephardsville and of other counties and cities of the state while in said city of Shepherdsville have been put in jeopardy and the aforesaid conduct of said parties and said company has caused terror and annoyance and placed in jeopardy the citizens of Bullitt county and Shepherdsville in said city and other persons having business in said city and persons on the trains of said railroad company in said city and at the said railroad station, and on the footpaths from the bridge of said railroad station, and those crossing the public streets and crossings in said city, and all to the common nuisance of all persons there being, passing and repassing and having the right to be, to pass and repass, and against the peace and dignity of the Commonwealth of Kentucky.''

The first error relied on, and the only one that we deem it necessary to consider, is the overruling of the demurrer to the indictment. The sufficiency of the indictment is assailed on the ground that it failed to allege that the running of the trains was without the necessary warnings to avoid injuring those using and crossing the company's tracks.

In the recent case of Cincinnati, N. O. & T. P. Ry. Co. v. Commonwealth, 126 Ky. 712, 104 S. W. 771, the railroad was indicted for maintaining a public nuisance by habitually running its trains through the incorporated town of Burgin at such an unreasonable and unsafe rate of speed as to endanger the lives and safety of persons using the crossing and without giving the customary and necessary warning signals of their approach. There it appeared that Burgin was an incorporated town of the sixth class with a population of about one thousand. The railroad ran through the town north and south. Its track was crossed by a turnpike which was the principal thoroughfare of the town. The main residence section of the town was on the west side, while the post office, school and churches and principal business houses were situated on the east side of the railroad. During the daytime there was a large amount of travel over the crossing. According to the Commonwealth's evidence, the company ran its trains through Burgin at a speed of from 40 to 70 miles an hour. However, the Commonwealth did not prove that the trains, in approaching and passing through Burgin, failed to give the usual and proper signals. On the contrary, the company showed that such signals were invariably given. After adverting to the fact that there was no state statute regulating the speed of trains through incorporated towns and that the town of Burgin had not, as it had the right to do, enacted an ordinance fixing a reasonable maximum speed, the court held that in order to find a railroad company guilty of committing a public nuisance by running its trains through an incorporated town at an unsafe rate of speed, without signals at a crossing therein, it was necessary not only to prove an habitual rapid running of the trains, but also that such running was without necessary warnings to avoid injuring those using the crossing. In laying down this rule, the court did not confine it to a case where a public crossing was being approached, but said:

"But, in order to sustain a penal prosecution against a railroad company for running its trains in city or country at a higher or even dangerous rate of speed, either upon a street or in approaching a crossing, it must be shown that such running of the trains was attended with a failure on the part of those operating

them to give the necessary and usual signals of their coming.''

That case cannot be distinguished from the case under consideration. The physical conditions surrounding the railroads in the two places are practically the same, with the exception that the town of Burgin is larger than Shepherdsville. Manifestly, if it is necessary to prove that the running of the trains was without the necessary warnings of their approach, it is essential to the sufficiency of the indictment that such fact should be alleged. We therefore conclude that in the absence of an ordinance fixing a reasonable maximum speed through an incorporated town, an indictment, charging a railroad company with the offense of maintaining a nuisance by habitually running its trains at such a dangerous rate of speed as to jeopardize the lives of those crossing its tracks, must also allege that such running of such trains was without the customary and necessary warnings of their approach. It follows that the demurrer to the indictment should have been sustained.

Since it was neither alleged in the indictment nor proved by the Commonwealth that the running of such trains was without the customary and necessary warnings of their approach, it is unnecessary to consider the appeal of the Commonwealth further than to say that the peremptory directing the acquittal of defendants, Starks, Sheridan and Fishback, was proper.

On the appeal of the Commonwealth the judgment is affirmed.

On the appeal of the Louisville & Nashville Railroad Company, the judgment is reversed and the cause remanded for proceedings consistent with this opinion.